USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

 _________________________

No. 97-2350

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 SANDRO MARTINEZ,

 Defendant, Appellant.

 _________________________

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF RHODE ISLAND

 [Hon. Ernest C. Torres, U.S. District Judge]

 _________________________

 Before

 Selya, Circuit Judge,

 Bownes, Senior Circuit Judge,

 and Boudin, Circuit Judge.

 _________________________

 Edward F. St.Onge on brief for appellant.
 Sheldon Whitehouse, United States Attorney, Margaret E. Curranand Kenneth P. Madden, Assistant United States Attorneys, on brief
for the United States.

 _________________________

 June 2, 1998

 _________________________ SELYA, Circuit Judge. Defendant-appellant Sandro
Martinez pled guilty to a single count of possessing a controlled
substance with intent to distribute. See 21 U.S.C. 841(a)(1)
(1994). The district court found that the substance in question
comprised 131.40 grams of cocaine base and 9.43 grams of powdered
cocaine. The court then determined that the cocaine base was crack
cocaine, see United States v. Martinez, 981 F. Supp. 726, 727
(D.R.I. 1997), and sentenced Martinez to 121 months in prison. 
Martinez appeals, contending that the government failed to prove
that the 131.40 grams of cocaine base was in fact crack cocaine.
 We need not tarry. In United States v. Robinson, ___
F.3d ___ (1st Cir. 1998) [No. 97-2185], we rejected an almost
identical challenge. See id. at ___ [slip op. at 8-15]. We held
squarely that, once the government laid a proper foundation "by
introducing a chemical analysis . . . proving that, chemically, the
contraband was cocaine base," id. at ___ [slip. op. at 12], no
further scientific evidence was needed. Instead, the government
could bridge the evidentiary gap between cocaine base and crack
cocaine by presenting lay opinion evidence (or an opinion proffered
by an expert who possessed practical as opposed to academic
credentials) from "a reliable witness who possesses specialized
knowledge" (gained, say, by experience in dealing with crack or
familiarity with its appearance and texture). Id. at ___ [slip op.
at 12-13]. These precepts are controlling here.
 To be sure, there is one arguably significant difference
between Robinson and the case at bar: Martinez posits that the
government introduced "[n]o testimony . . . as to the water
solubility or the melting point" of the confiscated contraband. 
Brief for Appellant at 5. That statement is true as far as it
goes, but it does not take Martinez very far. Both solubility and
melting point constitute ways of distinguishing between cocaine
powder (which is water-soluble but has a relatively high melting
point and therefore cannot be smoked) and cocaine base (which is
not water-soluble and which can be smoked because it has a lower
melting point). See Robinson, ___ F.3d at ___ [slip op. at 11];
United States v. Booker, 70 F.3d 488, 491 (7th Cir. 1995), cert.denied, 517 U.S. 1111 (1996). Neither characteristic is of
assistance, however, in distinguishing among forms of cocaine base. 
As we wrote in Robinson, ___ F.3d at ___ [slip op. at 12]:
"Chemical analysis cannot distinguish crack from any other form of
cocaine base because crack and all other forms of cocaine base are
identical at the molecular level. Thus, no further scientific
testimony would have been of any conceivable assistance, and we
will not require the government to indulge in an empty exercise." 
 In this case, as in Robinson, the government adduced
competent scientific evidence namely, the testimony of Gino
Rebussini, a chemist to prove that the 131.40 grams of contraband
associated with the appellant's arrest was cocaine base. Given the
witness's qualifications, his opinion constituted competent proof
of the fact that the substance was cocaine base. That further
tests could have been conducted, but were not, goes to the weight
of the evidence, not to its admissibility. See, e.g., United
States v. Bond, 12 F.3d 540, 561 (6th Cir. 1993); Christophersen v.
Allied-Signal Corp., 939 F.2d 1106, 1109 (5th Cir. 1991). Factors
such as water solubility and melting point, thereafter raised by
the defendant, went to the weight of the government's evidence, not
to its admissibility.
 That ends the matter. Once the government adduced
Rebussini's testimony, no additional scientific evidence was
exigible. From that point forward, as in Robinson, competent lay
testimony, remarking the substance's distinctive appearance and
texture and identifying it as crack, forged the final link in the
evidentiary chain.
 We need go no further. In Robinson, we said that "[o]n
the strength of [such] proof, and in the utter absence of any
controverting evidence," the district court's finding "easily
survive[d] clear-error review." Robinson, ___ F.3d at ___ [slip
op. at 13-14]. The same is true in this case.

 Affirmed.